IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

CAROLYN ANN WEATHERBEE,

    Plaintiff,

vs.                                     Case No. _____

LDRV HOLDINGS CORP., a foreign
corporation, d/b/a LAZY DAYS,

    Defendants.



## COMPLAINT

### General Allegations

1. Carolyn Ann Weatherbee ["Weatherbee"] is a natural person, is a consumer, and at all times material to this matter has been a resident of Lee County, Florida.

2. LDRV Holdings Corp. ["Lazy Days"] is a foreign corporation, duly authorized to conduct business in this State, which conducts business as Lazy Days, and which sells recreational vehicles to consumers throughout Florida.

3. Lazy Days is engaged in the manufacture, sale, distribution, and servicing of recreational vehicles.

4. On or about November 22, 2009 Weatherbee purchased a new 2007 Fleetwood Revolution recreational vehicle [the "R.V."] from Lazy Days for an amount in excess of $15,000.00 which R.V. was manufactured, distributed, and sold by Lazy Days.

5. Weatherbee was promised that the R.V. met her, and her families', travel needs.

6. Weatherbee's purchase of the R.V. was accompanied by certain express warranties offered by Lazy Days and was advanced to Weatherbee.

# 155454 v1

7. The warranties were part of the basis of the bargain of Weatherbee's contract for the purchase of the R.V.

8. The warranties covered any repairs or replacements needed during the warranty period and/or due to defects in materials or workmanship.

9. In fact, when delivered, the R.V. was defective in materials and workmanship, such defects being discovered within the warranty periods and repeated repairs were attempted.

10. That within the first months after purchase, the R.V. was returned for repairs and has been in for repairs not less than twenty-two (22) times since the date of purchase.

11. Because of defective materials and workmanship, and negligent service and repairs, on December 28, 2012 the R.V. caught fire while Weatherbee and her family were eating breakfast while on vacation.

12. That through the date of this Complaint Lazy Days, despite notice and opportunity has not inspected the R.V. which remains unrepaired and non-useable, at Lazy Days' request and Weatherbee continues to make payments on the R.V.

13. That because of defective materials and workmanship, and negligent service and repairs, Weatherbee has been without use of the RV in excess of 1,000 days and rising.

14. The defects experienced by Weatherbee have substantially impaired use and value of the R.V. to Weatherbee and has shaken Weatherbee's faith in the R.V. ever operating as promised by Lazy Days.

15. Despite Weatherbee's repeated efforts to allow Lazy Days the opportunity to repair the R.V., nonconforming and defective conditions still exist.

16. This cause arises out of Lazy Days' breaches of warranty and contract and violations of the enclosed statutes, as set forth in this Complaint.

#155454 v1

## COUNT I: BREACH OF WARRANTY

17.  This is an action for damages which exceed $15,000.00.

18.  Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 16.

19.  Defendants are merchants with respect to the R.V.

20.  Lazy Days made certain express warranties and representations to Weatherbee Plaintiff, both orally and in writing, designed to encourage her to purchase the R.V. A copy of the purchase agreement is attached as Exhibit "A".

21.  The express warranties have been breached by Lazy Days' failure to deliver the R.V. free from defects and by their failure to repair said defects.

22.  As a result of the R.V.'s defects, it cannot be reasonably relied on by Weatherbee for the very purposes she purchased the R.V. for.

23.  As a direct and proximate result of Lazy Days' various breaches of warranty, Weatherbee has suffered damages, including but not limited to: repair costs, loss of use of the R.V., loss of value, incidental and consequential damages and inconvenience.

24.  As a direct and proximate result of Lazy Days' various breaches of warranty, Weatherbee faces future inconvenience associated with the future repair work and down time, loss of use, loss of value, extensive repairs, incidental and consequential costs, together with costs and attorney fees necessary to secure relief from Lazy Days' wrongful conduct.

25.  Weatherbee has engaged the law firm of GrayRobinson to represent her and has agreed to pay said firm a reasonable fee for its services. Weatherbee is entitled to recover her attorney's fees and costs pursuant to paragraph 15 of the Agreement.

# 155454 v1

WHEREFORE, Plaintiff prays for judgment against Defendant for actual and consequential damages, interest thereon, costs of this action, reasonable attorney fees, and such other and further relief as the court may deem just and proper.

### COUNT II: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

26. This is an action for damages which exceed $15,000.00.

27. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 25.

28. Weatherbee is a "consumer" as defined in the Magnuson-Moss Warranty Act ("Warranty Act"), 15 U.S.C.A. § 2301(3).

29. Lazy Days is "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C.A. § 2310(4) and (5).

30. The R.V. is a consumer product as defined in 15 USC § 2301(1).

31. The express warranties more fully described hereinabove and pertaining to the vehicle is a "written warranty" as defined in the Warranty Act, 15 U.S.C.A. § 2301(6).

32. The actions of Lazy Days as described and in failing to tender the subject R.V. to Weatherbee free of defects and refusing to repair or replace the defective R.V. tendered to Weatherbee, constitute a breach of the written and implied warranties covering the vehicle and are a violation of the Magnuson-Moss Warranty Act.

33. Weatherbee has performed all things agreed to and required of her under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Lazy Days as herein alleged.

34. Lazy Days has had a reasonable opportunity to remedy the defects in the R.V. but has failed to do so, thereby entitling Weatherbee to a refund of the purchase price of $224,083.87 pursuant to the Magnuson-Moss Warranty Act.

35. As a proximate result of the misconduct of Lazy Days, and in an effort to protect her rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Weatherbee to employ GrayRobinson and Weatherbee incurred and continues to incur legal fees, costs and expenses in connection therewith.

36. As a direct and proximate result of the acts and omissions of Lazy Days, Weatherbee has been damaged.

37. Pursuant to the Magnuson-Moss Warranty Act, <u>15 U.S.C.A. § 2310(d)(2)</u>, Weatherbee is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages, interest thereon, costs of this action, reasonable attorney fees, and such other and further relief as the court may deem just and proper.

## COUNT III: REVOCATION OF ACCEPTANCE

38. This is an action for damages which exceed $15,000.00 and for revocation.

39. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 16.

40. The R.V. was accepted with the reasonable assumption that non-conformities existed.

41. The non-conformities and repair history of the R.V. resulting from the breaches of warranty have substantially impaired the value of the R.V. to the Plaintiff.

# 155454 v1

42. After numerous attempts by Lazy Days to cure the defects in the R.V., Weatherbee now believes the non-conformities cannot be seasonably or ever cured and she has lost confidence that the R.V. can be operated reasonably and properly and in conformity with the promised representations of Lazy Days.

43. Due to the R.V.'s lengthy repair history and continuing defects, Weatherbee seeks to revoke acceptance pursuant to Fla.Stats. §672.608 and the return of the purchase price of the R.V.

44. Lazy Days has refused to comply with Weatherbee's demand for revocation and a refund of the purchase price.

45. With the filing of this Complaint, Weatherbee continues her demand of Lazy Days to allow her to return the R.V. in exchange for the purchase price and any costs or expenses associated with the sale, repair and return of the R.V. as allowed by law.

WHEREFORE, Plaintiff prays that this court require Lazy Days to accept return of the subject R.V. and refund Plaintiff's purchase price, together with incidental and consequential expenses including repair costs, costs of insurance, interest and expenses, costs of this action and reasonable attorney fees.

## COUNT IV: BREACH OF DUTY OF GOOD FAITH

46. This is an action for damages which exceed $15,000.00.

47. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 25.

48. Lazy Days has breached its duty of good faith and fair dealing in this transaction by: breaching the express and/or implied warranties described herein; selling Weatherbee an

R.V. with the defects of which they knew or should have known; and failing to repair the above enumerated defects the first time during both warranty periods.

WHEREFORE, Plaintiff prays for judgment against Defendant for actual and consequential damages, interest thereon, costs of this action, reasonable attorney fees, and such other and further relief as the court may deem just and proper.

## COUNT V: NEGLIGENT REPAIR

49. This is an action for damages which exceed $15,000.00.

50. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 16.

51. On numerous occasions, Weatherbee has made the R.V. available to Lazy Days for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

52. On each occasion that Weatherbee made the R.V. available for repair, Weatherbee believes, and thereupon alleges, that Lazy Days attempted repairs pursuant to their obligations under the express and implied warranties accompanying the R.V.'s sale.

53. Lazy Days owed a duty of care to Weatherbee to perform repairs in a good and workmanlike manner and within a reasonable time.

54. Lazy Days breached this duty in that, the attempted repairs of the R.V. were done negligently, carelessly, and recklessly as to substantially impair the R.V.'s value in its operation and after each repair attempt, Lazy Days represented to Weatherbee that the repairs were complete, and Weatherbee relied on those representations.

55. Lazy Days' representations that the R.V. was repaired each time were false, one indication is that the R.V. caught fire and has been non-operable since December 28, 2012.

#155454 v1

56. As a direct and proximate result of Lazy Days' negligent failure to repair the R.V. within a reasonable time or within a reasonable number of attempts, Weatherbee has been forced to endure the loss of use of the R.V.

57. As a further direct and proximate result of Lazy Days' failure to repair the R.V. in a timely and workmanlike fashion, Weatherbee was forced repeatedly to endure further repair attempts and to lose use of the R.V. for long periods of time at great inconvenience.

58. As a further direct and proximate result of Lazy Days' failure to repair the R.V. in a timely and workmanlike fashion resulting in a fire while on vacation, Weatherbee, and her family have suffered emotional distress and pain and suffering.

59. The damages Weatherbee has suffered as a direct and proximate result of Lazy Days' negligence include but are not limited, to costs of repair, expenses associated with repeated repairs for the same problem, loss of use, insurance expenses, interest expense, and damages for emotional distress and pain and suffering.

## COUNT VI: MISREPRESENTATION

60. This is an action for damages which exceed $15,000.00.

61. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 16.

62. Lazy Days had a duty to perform repairs or cause repairs to be performed properly, professionally and in a reasonable time.

63. Lazy Days further duty was to disclose to Weatherbee if any defects or non-conformities were not repaired or could not be repaired within a reasonable time.

64. The above enumerated duties were heightened because the defects were related to the ability of Weatherbee, and her family, to safely operate the R.V.

# 155454 v1

65. Contrary to the aforementioned duties, Lazy Days represented the defects and/or nonconformities could be and were repaired, when they knew, or should have known that this was not the case or the truth.

66. Lazy Days falsely represented that they could repair the defects and non-conformities and that repairs were made to the Weatherbee's R.V., when in fact they were not.

67. Lazy Days intended that Weatherbee rely on the misrepresentations and Weatherbee did rely on same.

68. Weatherbee reasonably relied on Lazy Days' representations to its detriment, as herein before alleged.

69. Lazy Days has benefited from Weatherbee's reliance on Lazy Days' misrepresentations.

70. As a direct and proximate result of Lazy Days' negligent repair and misrepresentation, Weatherbee has suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount Plaintiff is found to be entitled to, equitable relief, plus interest, costs and reasonable attorney fees.

### COUNT VII: VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

71. This is an action for damages which exceed $15,000.00.

72. Weatherbee realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 through 25.

73. Lazy Days committed deceptive and unfair conduct in the conduct of its trade by: placing a vehicle in the stream of commerce and selling an RV to Weatherbee it knew or which it

# 155454 v1

should have known was defective; falsely representing that it could repair the defects and non-conformities in the Weatherbee R.V.; and representing to Weatherbee it had properly affected repairs of the defects and non-conformities when in fact it had not.

74.  Weatherbee has been damaged as result of Lazy Days' deceptive and unfair acts.

75.  Weatherbee has retained the law firm of GrayRobinson to represent her and has have agreed to pay said firm a reasonable fee for its services. Weatherbee is entitled to recovery of her attorney's fees pursuant to Fla.Stats. §501.2105.

WHEREFORE, Plaintiff demands judgment against Defendant for damages; attorney's fees and court costs; and such other and further relief as the Court may deem as just and equitable.

## DEMAND FOR JURY

NOW COMES Plaintiff, by and through her attorneys, and hereby makes demand for trial by jury for each and every claim or cause of action for which she is entitled to a trial by jury.

/s/ *Michael D. Randolph*
MICHAEL D. RANDOLPH
Florida Bar No. 119970
GrayRobinson P.A.
*Attorneys for Carolyn Ann Weatherbee*
8889 Pelican Bay Blvd., Suite 400
Naples, FL 34108
(239) 598-3601
(239) 598-3164 facsimile
michael.randolph@gray-robinson.com
debbie.helton@gray-robinson.com

#155454 v1

# EXHIBIT "A"

# 155454 v1

# Lazydays
NUMBER ONE IN RV'S

6130 Lazy Days Blvd. • Seffner, Florida 33584-2968
Local (813) 246-4333 • Sales (800) 626-7800 • Service (800) 282-7800

## BUYERS ORDER

Deposit: ☐ Refundable ☐ Non-Refundable

Contact type:
☐ Lot
☐ Phone
☐ E-mail

E-mail address: _____

| | |
|---|---|
| CUSTOMER # | 75029 |
| BUYER | CAROLYN ANN WEATHERBEE |
| ADDRESS | [redacted] |
| CITY | FORT MEYERS | STATE FL | ZIP 33912 | COUNTY LEE |
| SALESMAN | Kenneth D. |
| RES. PHONE: | BUS. PHONE: | DATE 11/22/2006 |

Subject to the terms and conditions on both sides of this agreement, I agree to purchase the following described unit.

| YEAR | MAKE | MODEL | APPROXIMATE LENGTH | STOCK NUMBER |
|---|---|---|---|---|
| New 2007 | Fleetwood | Revolution | 40 | 1000932 |

| COLOR | VIN | PROPOSED DELIVERY DATE | ODOMETER READING |
|---|---|---|---|
| | 4V2BR1J987C057930 | 11/22/2006 | 1133 |

| | |
|---|---|
| PRICE OF UNIT | 267430.00 |
| OPTIONAL EQUIPMENT | |
| SUB-TOTAL | 267430.00 |
| TRADE ALLOWANCE | 88165.00 |
| DIFFERENCE | 179265.00 |
| STATE TIRE FEE x $1.00 | 6.00 |
| STATE BATTERY FEE x $1.50 | 6.00 |
| AMOUNT TAXABLE | 179277.00 |
| SALES TAX @ 6.00 % | 10756.62 |
| SUB-TOTAL | 190033.62 |
| PAYOFF ON TRADE | 50400.67 |
| DEPOSIT | 500.00 |
| DISCRETIONARY TAX | N/A |
| ESTIMATED TAG / TITLE FEES | N/A |
| 15 MONTHS TAG ADD $30.00 | N/A |
| NEW TAG IMPACT FEE | N/A |
| CASH ON DELIVERY | 19500.00 |
| UNPAID BALANCE | 220434.29 |
| MECHANICAL PROTECTION PLAN | 3173.64 |
| Tire Guard | 475.94 |
| GAP WAIVER | N/A |
| TOTAL | 224083.87 |

OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES

*ALL MANUFACTURER INCENTIVES ASSIGNED TO LAZYDAYS*

IT IS MUTUALLY UNDERSTOOD THAT THIS AGREEMENT IS SUBJECT TO NECESSARY CORRECTIONS AND ADJUSTMENTS CONCERNING CHANGES IN NET PAYOFF ON TRADE-IN.

I UNDERSTAND THAT MANUFACTURERS' WARRANTIES DO NOT COVER VEHICLES SOLD, REGISTERED OR OPERATED OUTSIDE THE UNITED STATES AND CANADA AND THAT THESE VEHICLES ARE SOLD AS IS. I WILL THEREFORE CONSULT THE MANUFACTURER'S WARRANTY BEFORE PURCHASING A VEHICLE FOR OVERSEAS USE. I AGREE THAT IF THE VEHICLE IS DELIVERED OVERSEAS, LAZY DAYS IS NOT RESPONSIBLE FOR ANY DAMAGE THAT OCCURS DURING SHIPPING.

DESCRIPTION OF TRADE-IN:

| YEAR | MAKE & MODEL | SIZE |
|---|---|---|
| 1997 | Fleetwood | |
| VIN # 4UZ6XFBC0VC712297 | MILEAGE 58667 | |

DESCRIPTION OF TRADE-IN:

| YEAR | MAKE & MODEL | SIZE |
|---|---|---|
| | | |
| VIN # | MILEAGE | |

THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN YOU AND ME. ALL DISCUSSIONS, NEGOTIATIONS, REPRESENTATIONS, STATEMENTS AND INDUCEMENTS WHICH ARE A PART OF THE BASIS OF THE BARGAIN BETWEEN YOU AND ME AND WHICH ARE IMPORTANT TO ME ARE WRITTEN IN THIS CONTRACT AND ALL PARTS OF THIS CONTRACT ARE AGREED BY ME TO BE A PART OF THE BASIS OF THE BARGAIN BETWEEN YOU AND ME. I AGREE THAT ANY STATEMENTS, REPRESENTATIONS, WARRANTIES OR INDUCEMENTS, VERBAL OR WRITTEN, WHICH ARE NOT SPECIFICALLY WRITTEN IN THIS AGREEMENT SHALL NOT BE BINDING ON ANY PARTY.

I ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER, AND I HAVE READ, UNDERSTAND, AND AGREE WITH THE TERMS ON THE FRONT AND BACK OF THIS AGREEMENT.

Lazy Days R.V. Center, Inc.   DEALER
Not Valid Unless Signed by a Sales Manager

SIGNED X _Carolyn Weatherbee_ BUYER

By _Christine Kotick(?)_
Approved, Subject to acceptance by bank or finance company.

SIGNED X _____ BUYER

## ADDITIONAL TERMS AND CONDITIONS

In this contract the words I, me and my refer to the Buyer and Co-Buyer signing this contract. The words you and your refer to the Dealer. I further agree (continued from the other side of Contract):

1. **IF NOT A CASH TRANSACTION.** If I do not pay cash, I agree that before or at the time of delivery, I will enter into such agreements as may be required to finance my purchase. I agree that until you are paid in full you have a purchase money security interest in the Unit.

2. **TITLE.** I understand that you retain title to the Unit until 1) the full purchase price is paid, or I have signed a Retail Installment Contract and it has been accepted by a bank or finance company, and 2) I have taken possession of the motor home, at which time title passes to me. Unless you are submitting my title and registration for me, I am responsible to title and register my vehicle no later than 45 days from purchase, purchase, or sooner, if required by the law of the state I am titling in.

3. **TRADE-IN.** If I am trading in a used car, trailer, other vehicle, or any other property I will give you the title to the trade-in. I promise that any trade-in which I give is owned by me and is free of any liens or other claim unless noted on the other side of this contract. I promise there are no undisclosed material defects or material conditions in my trade-in which are not written on the other side of this contract and I have accurately described its condition to you. I promise that all taxes of every kind levied against the trade-in have been fully paid. If anyone makes a levy or claims a tax lien or demand against the trade-in, you may, at your option, either pay it and I will reimburse you on demand, or you may add that amount to the contract as if it had been originally included.

4. **REGISTRATION OR LICENSE OF TRADE-IN.** If I have a trade-in and you determine that it needs a licensing or registration change then I will pay any and all expenses, taxes and registration or licensing fees or costs.

5. **REAPPRAISAL OF TRADE.** If there has been a mistake as to the model year of my trade-in or if I am making a trade-in and it later appears to you that there are material differences in the furnishings, accessories or condition of the trade-in compared to how it was represented, you may make a reappraisal. The reappraisal value will then determine the allowance to be made for the trade-in. Any balance due created by such reappraisal shall be immediately payable upon demand. If I fail to pay the balance due I hereby agree that a lien for the amount due may be recorded against the coach I am purchasing.

6. **FAILURE TO COMPLETE PURCHASE.** In consideration of my deposit, you will hold the unit from other sale for 48 hours, or beyond 48 hours at your option. IF I DO NOT COMPLETE THIS PURCHASE WITHIN 30 DAYS OF THIS CONTRACT, YOU MAY KEEP ANY MONIES I PAID YOU, INCLUDING ANY DEPOSIT, TO REIMBURSE YOU FOR EXPENSES OR LOSSES YOU HAVE INCURRED BECAUSE I FAILED TO COMPLETE THIS PURCHASE. I AGREE THAT THESE MONIES WILL BE RETAINED AS LIQUIDATED DAMAGES BECAUSE CALCULATION OF YOUR LOSSES WOULD BE DIFFICULT. If I have given you a trade-in, you may also sell the trade-in at public or private sale, and deduct from the money received an amount equal to the expenses and losses you have sustained because I failed to complete this purchase. If I breach any of my obligations under this agreement, you have the right to repossess the vehicle.

7. **CHANGES BY MANUFACTURER.** I understand that the manufacturer may make changes in the model, or the designs, or any accessories and parts from time to time. If the manufacturer does make changes, I will accept those changes. Neither you nor the manufacturer are obligated to make the same changes in the unit I am purchasing, either before or after it is delivered to me.

8. **DELAYS.** I will not hold you liable for delays caused by the manufacturer, accidents, strikes, fires, or any other cause beyond your control.

9. **EXCLUSIONS OF WARRANTIES.** I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE EXCLUDED BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT THERE ARE NO WARRANTIES MADE BY YOU WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT WHICH IS A PART OF THE UNIT OR THIS SALE. I AGREE THAT ANY PRE-DELIVERY INSPECTION PERFORMED BY YOU, DOES NOT CREATE ANY WARRANTY, EXPRESS OR IMPLIED. "I AGREE THAT PARAGRAPHS 9 AND 11 APPLY EVEN IF I PURCHASE A SERVICE CONTRACT OR EXTENDED WARRANTY FROM YOU." I AGREE THAT YOU MAKE NO WARRANTY REGARDING THE SUITABILITY OF THE VEHICLE FOR USE IN ANY STATE OR COUNTRY. VERBAL DISCUSSIONS OF THIS NATURE WITH ANY OF YOUR EMPLOYEES NOT REFLECTED ON THE FACE OF THIS AGREEMENT, ARE NOT BINDING. IT IS MY RESPONSIBILITY TO LEARN ABOUT ANY APPLICABLE RESTRICTIONS GOVERNING WEIGHT, LENGTH, WIDTH, ETC., BEFORE I PURCHASE A VEHICLE. I AGREE THAT YOU DO NOT WARRANT THE YEAR IN WHICH THE UNIT OR ANY OF ITS PARTS OR COMPONENTS WERE MANUFACTURED.

10. **INSPECTION AND ACCEPTANCE.** I understand that at the time I receive the Unit, I am accepting the Unit and all its components and appliances in the condition they are in. I have examined the Unit and its components and appliances as fully as I desire and in making this purchase have relied upon my own judgment and upon my own inspection in determining that the Unit is of acceptable quality and function.

11. **MANUFACTURERS WARRANTIES.** MECHANICAL PROBLEMS MAY ARISE WITH ANY VEHICLE. I UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASED, OR ANY APPLIANCE(S) OR COMPONENT(S), SUCH AS THOSE WHICH HAVE BEEN PROVIDED BY THE MANUFACTURERS OF THE UNIT, THE APPLIANCE(S) OR THE COMPONENT(S). I ACKNOWLEDGE THAT ALL WRITTEN WARRANTIES HAVE BEEN MADE AVAILABLE TO ME PRIOR TO PURCHASE; UPON MY REQUEST. I UNDERSTAND THAT THE WRITTEN WARRANTY OR WARRANTIES I RECEIVE AT THE TIME OF SALE ARE MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT I MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR COMPONENT(S). I AGREE THAT NO OTHER REMEDIES, WHETHER ARISING FROM THE UNIFORM COMMERCIAL CODE OR OTHERWISE, ARE AVAILABLE TO ME, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND/OR RESCISSION. I AGREE THAT PARAGRAPHS 9 AND 11 APPLY EVEN IF MY REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.

12. **INSURANCE.** I understand that I am not covered by insurance on the Unit purchased until accepted by an insurance company; and I agree to hold you harmless from any and all claims due to loss or damage prior to acceptance of insurance coverage by an insurance company. I understand that it is my obligation to insure my unit at all times.

13. **TAXES.** All sales and use taxes arising out of the sale of the vehicle, and all personal property taxes assessed on the vehicle after the title has passed to purchaser, shall be borne and paid by purchaser.

14. **NO SPECIAL DAMAGES.** I understand that you will not be liable for incidental, consequential or special damages, including loss of use, resulting from or arising in any way out of this transaction or the purchase, use, servicing, operation or ownership of the goods conveyed by this agreement.

15. **APPLICABLE LAW, VENUE AND FEES.** This sale and this contract and all negotiations and discussions between you and me are governed by Florida law. Any and all actions of any kind brought by me or you relating to this sale or the product purchased must be filed exclusively in Hillsborough County, Florida. All proceedings, mediations, inspections, etc. relating to such an action will be conducted exclusively in this venue. If I fail to pay any amount due to you and collection efforts are required, I agree to pay your attorney's fees and costs.

16. **WAIVER OF JURY TRIAL.** I AGREE THAT ANY AND ALL ACTIONS OF ANY KIND RELATING TO THE ITEM(S) SOLD WILL BE DECIDED BY A JUDGE, RATHER THAN A JURY.

17. **ODOMETER NOTICE.** You have not tampered with or altered the odometer or the odometer reading and you have no knowledge of the odometer reading being inaccurate unless it is reflected on the disclosure. You do make all disclosures which are required under applicable laws. You do not warrant or guarantee the odometer or the odometer reading of any unit as I understand that you must rely on the odometer reading provided by the prior owner. I understand that it is up to me to research the vehicle history if mileage is important to me. If my vehicle is over 16,000 pounds or 10 years old, my title may reflect that the vehicle is exempt from mileage disclosure under federal law.

18. **VEHICLE WEIGHT RATING.** I must verify that the vehicle weight rating meets my needs and my uses. I understand that I should verify the weight rating with the manufacturer because ratings may change over time. Exceeding the manufacturer's weight rating is unsafe and may void my warranty.

19. **SEVERABILITY/WAIVER.** If any word, phrase, or paragraph or section of this Agreement shall be found to be void, voidable, unenforceable, or otherwise unlawful, this Agreement shall be construed as though only that word, phrase, sentence, or paragraph were omitted when originally executed and all other portions of this order shall remain undisturbed. The failure to enforce any provision of this contract will not constitute a waiver.

20. **VEHICLE LENGTH.** I understand that the length specifications used in the RV industry are approximations. If the exact length is important to me, I will measure the vehicle prior to signing this agreement.